THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CIBC Bank USA f/k/a The Private Bank and Trust Company, as Administrative Agent, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 18-cv-3964 |
| v. | ) ) ) | Judge John Z. Lee |
| JH Portfolio Debt Equities, LLC; JH Portfolio Debt Equities 2, LLC; JH Portfolio Debt Equities 4, LLC; and JH Reviver LLC, | ) ) ) ) | Magistrate Judge Daniel G. Martin |
| Defendants. | ) ) | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR ORDER APPOINTING RECEIVER**

Defendants JH Portfolio Debt Equities, LLC, JH Portfolio Debt Equities 2, LLC, JH Portfolio Debt Equities 4, LLC, and JH Reviver LLC ("JH" or "Defendants"), respectfully submit the following response in opposition to the Motion for Order Appointing Receiver filed by plaintiff, CIBC Bank USA ("CIBC") (Doc. 8.).[1]

*Introduction*

Within days of filing its complaint alleging the breach of a credit agreement ("Credit Agreement"), CIBC filed a motion seeking the appointment of a receiver. But CIBC does not seek a receiver simply to monitor the business and preserve the *status quo* during the pendency of the case. Rather, CIBC wants to skip the lawsuit and jump to post-judgment proceedings. As reflected in its Proposed Order, CIBC asks this Court to appoint a receiver to take over JH's business and *liquidate all of its assets*. (*See* Proposed Order Appointing Receiver (Doc. 8-4) §§ III (control), VIII (liquidation).) As shown below, CIBC did not bargain for the right to a liquidating receiver

---

[1] "Doc. __" refers to the document numbers from the Court's electronic docket.

as an interim remedy for a claimed breach of the Credit Agreement, and CIBC's request to install a receiver to assume control of the business and sell the assets is the polar opposite of an "equitable" receivership.

In extreme circumstances, a receiver may be appointed to preserve the *status quo*—not to alter it, as CIBC seeks to do here. As the Seventh Circuit has made clear, "[t]he power to appoint a receiver is a drastic, harsh and *dangerous* one and should be exercised with care and caution …. 'the object being *to secure and preserve the property* or thing in controversy *for the benefit of all concerned* pending the litigation, so that it might be subjected to such order or decree as the court might make or render.'" *Connolly v. Gishwiller,* 162 F.2d 428, 435 (7th Cir.1947) (emphasis added; citation omitted).

Unlike the pre-judgment attachment and liquidation that CIBC proposes, a receivership is a provisional remedy, not a final disposition on the merits or a collection proceeding.

> The appointment of a receiver is merely an ancillary proceeding to a main action. Its purpose generally is 'to secure the means for satisfying the final judgment in case the plaintiff should succeed in the action ...' In other words, the Receiver is appointed *to maintain the status quo regarding the property in controversy* and to safeguard said property from being dissipated while the plaintiff is pursuing his remedy.

*In re Gourmet Services, Inc.*, 142 B.R. 216, 218-19 (Bankr. S.D. Ohio 1992) (denying receiver's motion to terminate a lease: "the alteration of the contractual rights of the Property owner and third parties certainly goes beyond simple maintenance and preservation of the Property") (emphasis added, citation omitted); *see also Phillippi v. Phillippi*, 2009 WL 1394830, *3 (S.D. Ohio May 18, 2009) (rejecting motion for appointment of receiver sought for a purpose other than "to prevent future harm") (cited by CIBC). Here, CIBC's request to install a receiver to assume control over the business and sell the assets would upend the *status quo* by destroying the business and causing irreparable harm to the other creditors, partners, employees and members of JH.

Even if CIBC were to redraw its proposed order to limit the proposed receivership to mere oversight responsibilities, CIBC has not satisfied the extremely high standards for the appointment of such a receiver, which is an "extraordinary" remedy and "only appropriate in cases of urgent necessity." *D'Kids Partners, LP v. Kirlin*, 2017 WL 1502790, at *8 (C.D. Ill. 2017); *accord Voso v. Ewton*, 2016 WL 1435721, at *1 (N.D. Ill. 2016) (citing *Connolly,* 162 F.2d at 435). The factors to be considered in the decision to appoint a receiver include: (1) whether there is proof of fraudulent conduct on the part of a defendant; (2) whether there is imminent danger of property being concealed, lost, diminished in value, or squandered; (3) the inadequacy of the available legal remedies; (4) the probability that harm to a plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and (5) the plaintiff's probable success in the action and the possibility of irreparable injury to his or her interests in the property. *Regions Bank v. R & D Dev. Corp.*, 2011 WL 2149086, at *3–4 (S.D. Ill. 2011).

CIBC barely pays lip service to these factors. As explained below and in the accompanying declarations, CIBC has not come close to establishing the type of exigent circumstances that would warrant a receiver:

- There is no proof of any fraud;
.
- There have been no fraudulent or self-dealing transfers—the disbursements that CIBC describes were for overhead or amounts owed to third parties pursuant to contract;

- CIBC has not pursued its available legal remedies under the Security Agreement;

- CIBC does not address the devastating damage that a liquidating receivership would cause Defendants, other creditors, members and partners – all of whom would be irreparably harmed if a liquidating receiver was appointed to sell off defendants' performing assets;

- CIBC has not shown that it would suffer irreparable harm in the absence of a liquidating receivership—it does not contend that the value of the assets is less than its loan amount or that Defendants are not making the best use of the assets; and

3

- Because CIBC's request for final relief in this action does not involve a disposition of collateral, there is no equitable basis to put the collateral in receivership.

CIBC's request for a receivership should be denied for the additional reasons that: (i) at CIBC's request, Defendants have been working with CIBC's consultant, FTI Consulting ("FTI"), to analyze JH's financials and operations and provide information to CIBC (at Defendants' expense); (ii) the receiver whom CIBC seeks to have appointed is a Senior Managing Director of FTI and, thus, he lacks the requisite independence to serve as a receiver; and (iii) JH already has engaged a qualified Chief Restructuring Officer, who is evaluating restructuring alternatives and will act as the principal point of contact with CIBC *and other creditors* with respect to JH's finances and operations.

There is no need for an oversight receiver to monitor or duplicate the work of the Chief Restructuring Officer, and there is absolutely no basis for the imposition of a liquidating receivership. The Court should deny CIBC's motion.

*Argument*

**1.     CIBC has not shown that Defendants engaged in fraudulent conduct.**

In its motion, CIBC argues that Defendants "engaged in fraudulent conduct." (Doc. 8 at pp. 5-6, 11.) However, CIBC does not submit evidence to back up its conclusory argument. Indeed, CIBC does not even plead a fraud claim in its complaint.[2] Rather, CIBC alleges that Defendants breached the Credit Agreement by overestimating the Estimated Remaining Value ("ERV") of certain portfolios when it submitted Borrowing Base Certificates to CIBC. (Compl. ¶¶ 41-42, 55.)

---

2      *Compare Connolly,* 162 F.2d at 434-35 (cited by CIBC, where the verified complaint "set forth in detail the charges of fraud and conspiracy . . ." and that certain assets "had been illegally obtained" and other assets had been "wrongfully obtained").

4

Stripped of pejorative characterizations, CIBC avers nothing more than that JH errantly reported "100% of the ERV of the JH Met Portfolios and the JH CX Portfolios without excluding the portion of the ERVs which were allocated to certain joint venture partners." (Compl. ¶ 55.)

CIBC offers no evidence that JH's inclusion of the JV partners' share of the projected revenues was anything other than an error. (*See* Riggio Dec. ¶¶ 22-25, 31-39.)[3] As set forth in the Riggio Declaration, JH disclosed and explained the error to CIBC in March 2018. (Riggio Dec. ¶¶ 33-42.)[4] As the Seventh Circuit has held, calling something illicit does not make it so, especially when there is a more plausible, innocent explanation for the conduct. *Cohen v. American Security Ins. Co.*, 735 F.3d 601, 611-12 (7th Cir. 2013) ("[S]imply calling the commission a kickback doesn't make it one …. When the allegations are 'not only compatible with, but indeed are more likely explained by, lawful' conduct, the complaint fails to state a plausible claim for relief."); *see also Cintuc, Inc. v. Kozubowski*, 230 Ill.App.3d 969, 974-75 (1992) ("Fraud is not presumed; rather, it must be proved by clear and convincing evidence …. 'If the motives and designs of the parties charged with fraud or collusion may be traced to an honest and legitimate source equally as to a corrupt one, the former explanation ought to be preferred.'") (citations omitted).

CIBC's slanted characterizations of Defendants' borrowing base errors are not supported by its allegations and evidence, and CIBC has not come close to proving fraud by clear and

---

[3] The supporting Declarations of Anthony Riggio, Todd Harrington, Keri Krisan, and Paul Barkes have been submitted herewith and are cited herein as "Riggio Dec. ¶ __," *et cetera*. The supporting Exhibits to the Declarations and this Response are marked and cited herein as "JH ___." In the courtesy copy for the Court, we will include the Declarations and Exhibits in an Appendix to the Response.

[4] CIBC also argues that the JH Entities "incorrectly modif[ied] and elongat[ed] the timing of the projected collections." (Doc. 8-2 ¶ 28.) This too was explained to CIBC by the JH Entities (Riggio Dec. ¶ 38-43), and CIBC again offers no evidence of any fraud.

convincing evidence. And because CIBC does not assert a fraud claim against the Defendants, there is zero likelihood that CIBC will prove fraud in the underlying case.

Also significant for the purposes of this motion, CIBC does not contend that JH used the loan proceeds under the Credit Agreement for any improper purpose. As CIBC knows, JH used the loans to purchase debt portfolios, which are the operating assets that the Credit Agreement was intended to finance. (Riggio Dec. ¶¶ 26-29.) CIBC also omits that (i) after JH discovered the borrowing base error, it paid down the balance of the CIBC loans by $7.5 million, and (ii) JH is current on the interest payments due on the outstanding loans. (Riggio Dec. ¶¶ 28, 30.) These additional facts (which CIBC ignores) also are contrary to CIBC's baseless argument that there was any fraudulent conduct.

**2.      There has been no concealment or illicit diversion of assets.**

CIBC does not allege that JH has concealed collateral or used funds for non-business purposes. Rather, CIBC argues that JH (i) did not provide certain information to CIBC, (ii) made disbursements that it contends were not permitted by the Credit Agreement, and (iii) did not separate collections from different portfolios into segregated accounts. (Doc. 8 at pp. 6-8.) As explained below, even these argumentative allegations overstate the issues.

   a.      *CIBC already has access to JH's records and accounts, and JH has cooperatively provided information and access to CIBC and its consultant.*

CIBC argues that Defendants have failed to deliver required information to CIBC (Doc. 8 at pp.6-7), and that a receivership is needed in order to secure access to the books, records, and accounts of the JH Entities. (*See* Proposed Order Appointing Receiver (Doc. 8-4) at p.5-7.) However, CIBC omits the fact that it *already* has access to JH's books, records and accounts— and to key personnel. Specifically, at the request of CIBC, the JH Entities have been working with FTI Consulting ("FTI") since March 2018 to analyze the issues surrounding the business's

6

borrowing base. (Riggio Dec. ¶¶ 45-46.) FTI's responsibilities also include the review of JH's financial performance and operating cash flow. (*Id.* ¶ 46.) And, FTI reports directly to CIBC. (*Id.* ¶¶ 45, 49.)

Two of JH's employees serve as primary liaisons to support FTI. Andi Zekthi provides analytical support and Keri Krisan provides financial information and documentation. (Riggio Dec. ¶ 47.) Anthony Riggio (the president of JH) is involved with the FTI work at the executive level. (*Id.*) From April through June 2018, communication with FTI occurred on a near-daily basis, including phone calls and email exchanges transmitting spreadsheets or other documents. (*Id.* ¶ 48.) During the months of April and May 2018, FTI periodically visited JH's offices in California and Missouri. (*Id.*) In addition to its commitment of time to supporting FTI's efforts, JH is also responsible for the expense of this analysis. The FTI invoice for the month of April alone was $457,330.56. (*Id.* ¶ 50.)[5]

In its motion, CIBC fails to disclose that it installed FTI to analyze JH's borrowing base, operations and financials, and that JH has cooperated with CIBC and FTI in providing access to such information. Given that CIBC has had access to JH's books, records and accounts – and key personnel – at least since March 2018, CIBC cannot establish a need for the appointment of a receiver for this same purpose. *Voso* 2016 WL 1435721 at *13 (rejecting "drastic" receivership remedy in favor of intermediate, information-gathering and oversight measures (akin to those already being performed by FTI here)).

---

[5] JH also has directly responded to CIBC's requests for information. (Riggio Dec. ¶¶ 44, 51; Krisan Dec. ¶ 6.)

As explained below, JH has engaged a chief restructuring officer, whose responsibilities include interfacing with CIBC and providing it with information. (Riggio Dec. ¶¶ 56-57.)[6] To the extent CIBC reasonably seeks additional information, JH will provide it.

    b.    *There have been no disbursements for non-business purposes.*

CIBC argues that JH has made "distributions" to members and has "diverted" cash collateral to joint venture partners. (Doc. 8 at p.8.) However, CIBC omits that the "distributions" it describes were for overhead and operating expenses. (Harrington Dec. ¶¶ 18-20.) And the disbursements to the joint venture partners for their respective shares of the portfolio collections and other payments to or for the benefit of the joint venture partners all were in accordance with pre-existing agreements. (Harrington Dec. ¶¶ 3-17; Krisan Dec. ¶¶ 3-5; 8-10.) CIBC's contention that these disbursements were not permitted in light of the alleged default under the Credit Agreement is not a basis for an equitable receivership. Unlike in other cases where the factors favored a receivership, there are no allegations or proof of unaccounted-for cash or transfers made

---

[6] The review and oversight by FTI and the Chief Restructuring Officer – and the absence of any evidence that Defendants have been self-dealing – puts this case on a very different footing than those cited by CIBC. In CIBC's lead case, *JPMorgan Chase Bank, N.A. v. Heritage Nursing Care, Inc*., it was alleged that defendant transferred significant sums to another entity controlled by an insider, and significant financial information was missing – yet, even in the face of these allegations the court appointed a receiver with only *limited* authority, one "who would only monitor, rather than manage, the financial activities of Defendants." 2007 WL 2608827, at *10 (N.D. Ill. Sept. 6, 2007). In *Miller v. Up in Smoke, Inc.*, the court's appointment of a "Full Receiver" followed the agreed appointment of a "Limited Receiver" and was premised on findings that the defendants' business was "operated in a culture where there are virtually no checks or balances concerning their activities and no reliable records of their financial dealings" and that the defendants were using funds from the company to support a separate, competing family-operated business. 2010 WL 5095812, at *4 (N.D. Ind. Dec. 8, 2010). In *S.E.C. v. Universal Express, Inc.*, defendants had been convicted of securities fraud by the same court and "continue[d] to violate court orders." 2007 WL 2469452, at *1, *12 (S.D.N.Y. 2007); *see also Tcherepnin v. Kirby*, 416 F.2d 594, 596 (7th Cir. 1969) (assets languished in state liquidation proceedings for four years prior to motion to appoint receiver, and a majority of state liquidators were potentially in a position of conflict).

for non-business purposes. *Cf. Voso*, 2016 WL 1435721 at *9, *12 (declining to order receivership despite evidence of cash transfers for non-business purposes and "extensive record evidence" that business had "failed to maintain corporate formalities, including books and records").[7]

   c. *JH already has addressed CIBC's complaint that JH did not segregate its accounts.*

CIBC argues that JH "comingl[ed]" funds. (Doc. 8 at p.7.) However, what CIBC really means is that JH did not separate collections from different portfolios into segregated accounts. (*Id.*) CIBC does not allege that JH failed to properly account for the deposits. Regardless, JH has addressed CIBC's concerns by opening segregated accounts for its different collection streams. (Barkes Dec. ¶¶ 3-7.) In addition, since April, 2018, JH has been providing CIBC with a regular accounting of its collections and disbursements. (Krisan Dec. ¶¶ 6-7.)

\* \* \*

CIBC has not shown that there is an "urgent necessity" for the "extraordinary remedy" that it seeks. *D'Kids Partners,* 2017 WL 1502790 at *8. To the contrary, since discovering the error with the borrowing base in March 2018, JH has cooperated with CIBC and worked diligently to address its concerns.

---

[7]  *See also Miller*, 2010 WL 5095812 at *4 (involving alleged payments to defendants' family businesses); *JPMorgan Chase Bank, N.A.*, 2007 WL 2608827 at *9 (payments for unidentified purposes to an entity controlled by insider); *Tanzer v. Huffines,* 408 F.2d 42 (3d Cir. 1969) (defendants convicted of federal securities fraud); *Matter of McGaughey*, 24 F. 3d 904, 907 (7th Cir. 1994) (Government made *prima facie* showing for appointment of a *statutory* receiver pursuant to I.R.C. §7403(d) that the Government's efforts to collect a substantial tax liability may be jeopardized due to debtor's efforts to dissipate assets by funneling money to wife and relatives).

**3. CIBC has adequate available legal remedies under the Security Agreement.**

In the Credit Agreement and Security Agreement (Docs. 1-1 and 1-3), CIBC did not bargain for the right to seek a liquidating receivership in the event of an alleged default.[8]

However, CIBC did bargain for the right to foreclose on the collateral in the event of a default. (Security Agreement (Doc. 1-3) §§ 5.2(a) ("Possession and Assembly of Collateral") and (b) ("Sale of Collateral").) Instead of pursuing the contractual remedies available to it under the Security Agreement, CIBC: (i) incorrectly asserts that "no other legal remedy would serve to preserve the collateral" (Doc. 8, at 12); and (ii) asks this Court to exercise its equitable powers to impose the "drastic, harsh and dangerous" remedy of a receivership and to oversee a liquidation of JH's assets. But the imposition of an equity receivership is not appropriate if the plaintiff has adequate legal remedies available to it. *In re Teknek, LLC,* 343 B.R. 850, 876 (Bankr. N.D. Ill. 2006) (for a court to impose an equity receiver, "other remedies, including remedies at law and injunctions, must be inadequate means for accomplishing the object of the receivership"); *see also Regions Bank*, 2011 WL 2149086 at *3–4 (identifying adequacy of other available legal remedies as a factor in determining whether an equity receivership is appropriate).

**4. The proposed receivership order would put Defendants out of business.**

As alleged in the Complaint, the JH Entities are in the business of purchasing portfolios of consumer and merchant loan obligations at a discount off the face value of such loans (each a 'Portfolio') and generating profits by deploying a proprietary collections platform and network of collection agencies to professionally manage the recovery of the amounts due on the accounts."

---

[8] *Cf. Can. Life Assurance Co. v. LaPeter*, 563 F.3d 837, 840 (9th Cir. 2009) (terms of relevant documents entitled plaintiff to apply for the appointment of a receiver) (cited by CIBC).

10

(Compl. ¶ 7.) CIBC's request to install a receiver to assume control over the business and sell the assets would destroy this business.

Plaintiff's proposed order would authorize the receiver to liquidate the assets of the Defendants, including their Portfolios. (*See* Proposed Order (Doc. 8-4) at p.10 (granting the receiver the power to "transfer, compromise, abandon or otherwise dispose of any Receivership Property in the ordinary course of business" without Court approval and allowing receiver to "sell assets outside of the ordinary course of business with Court approval"). Plaintiff also asks this Court to give the receiver full control over Defendants' business (*See* Proposed Order (Doc. 8-4) § III.A. at p.2-3 ("Receiver shall have all powers … possessed by the officers, directors, members [and] managers … with respect to the management … of the Receivership Property.").

There are other creditors and third parties that rely on JH to continue to operate its business and collect on the Portfolios that CIBC seeks precipitously to liquidate. (*See* JH 1 (Jacobsen Credit Holdings LLC Organizational Chart and Debt Summary); Riggio Dec. ¶¶ 11-19; Harrington Dec. ¶¶ 4-16.) Citibank has a $50 million loan guaranteed by JH Capital Group Holdings LLC, a parent company of the defendant JH entities, and Citibank will be severely impacted by a liquidation of the assets of the subsidiaries. (Riggio Dec. ¶ 18; *see also* JH 1.) In addition, Defendant JH Portfolio Debt Equities, LLC is a party to joint venture agreements with third parties with respect to certain of the Portfolios. (Harrington Dec. ¶¶ 4-16; *see also* JH 1 p.2 (JH CX Asset Entity, LLC and JH Met Asset Entity, LLC).) The parties to these joint venture agreements would be severely impacted by a liquidation of these Portfolios.

In its motion, CIBC does not even address the irreparable harm that its proposed receivership would cause Defendants, other creditors, third parties, employees and members.

11

Instead, CIBC summarily declares that "any potential harm to the [Defendants] is minimal to non-existent" (Doc. 8 at 12)—as if no harm would result from a total liquidation of Defendants' assets.

What *is* nonexistent, however, is any contention (much less a demonstration) by CIBC that it will be irreparably harmed in the absence of its proposed liquidating receivership. Indeed, CIBC does not contend that the going-forward operating value and collections from the Portfolios will be insufficient to satisfy the debt.

Given that CIBC's proposed order would destroy Defendants' business, and CIBC has made no showing of irreparable harm, the balancing of harms weighs heavily against the imposition of a liquidating receivership as a provisional remedy.

**5.  A receivership is not a stand-alone remedy or an end in itself—because CIBC's request for final relief in this action does not involve a disposition of collateral, there is no equitable basis to put the collateral in receivership.**

CIBC's request for a receivership cannot be reconciled with the claim and request for relief in the complaint. CIBC's only claim is for breach of contract, and the only relief it seeks (other than a receivership) is a money judgment. (Compl. (Doc. 1) at p.17.) But a receivership over property is not a stand-alone remedy. Rather, it is an ancillary remedy and must be connected to a final request for a disposition of property. Because the final relief sought by CIBC in this action does not involve a disposition of property, there is no equitable basis to appoint a receiver to preserve property pending such final disposition. As the Supreme Court held:

> *A receivership is only a means to reach some legitimate end sought through the exercise of the power of a court of equity. It is not an end in itself.* Where a final decree involving the disposition of property is appropriately asked, the court in its discretion may appoint a receiver to preserve and protect the property pending its final disposition. For that purpose, the court may appoint a receiver of mortgaged property to protect and conserve it pending foreclosure. … of trust property pending the appointment of a new trustee or of property which a judgment creditor seeks to have applied to the satisfaction of his judgment … *But there is no occasion for a court of equity to appoint a receiver of property of which it is asked to make no further disposition.*

*Gordon v. Washington*, 295 U.S. 30, 37 (1935) (emphasis added; citations omitted). Because CIBC does not seek a final decree involving the disposition of the collateral that it seeks to place under receivership, there is no basis for the Court to exercise its equity powers to place the collateral in receivership. Put another way, because CIBC does not seek final relief with respect to the collateral, it obviously has no likelihood of prevailing on a non-existent claim against the collateral.

6. **The Court should deny the motion for the additional reasons that (i) the receiver proposed by CIBC lacks independence, and (ii) JH already has engaged a Chief Restructuring Officer.**

   a. *The receiver candidate proposed by CIBC lacks the requisite independence.*

CIBC omits telling the Court that the receiver it seeks to have appointed works for the same consulting firm (FTI Consulting) that has been working for CIBC since March 2018 to evaluate and report on the borrowing base issues that are the subject of the Complaint. (Riggio Dec. ¶¶ 45-48.) Because FTI's loyalties are to CIBC, both FTI and its Senior Managing Director, Mr. Greenspan, lack the requisite independence to serve as a receiver in this action. *Regions Bank*, 2011 WL 2149086, at *3 ("A receiver is an officer of the court and does not owe allegiance to the one who sought his or her appointment, but rather acts as a fiduciary on behalf of both parties."); *see also In re Teknek, LLC*, 343 B.R. at 874 ("A receiver is defined to be an indifferent person between the parties, appointed by the court, and on behalf of all parties, and not of the complainant or one defendant only, to receive the thing or property in litigation, pending the suit.").

   b. *Defendants already have engaged a Chief Restructuring Officer.*

On June 21, 2018, after discussions with CIBC, Defendants hired Matthew Kvarda (of Alvarez and Marsal North America LLC) to serve as the Chief Restructuring Officer of the JH Defendants. (Riggio Dec. ¶¶ 56-57; *see also* JH 13.) Mr. Kvarda's responsibilities are set forth in

Paragraph 1 of the engagement letter and include: 1) reviewing and assessing the JH Entities' financial information and performance, which information will be shared with CIBC and the JH's other creditors; and 2) assisting in the development of possible restructuring plans and strategic alternatives for maximizing the enterprise value of Defendants' business; 3) serving as the principal contact with CIBC and other creditors with respect to JH's finances and operations. (Riggio Dec. ¶ 56; *see* JH 13.)[9] Mr. Kvarda is well qualified to serve as the CRO (Riggio Dec. ¶ 57; *see* JH 14), and CIBC has not objected to Mr. Kvarda serving as the CRO.

As Judge St. Eve determined in a case where (unlike here) several factors favored a receivership, courts should avoid imposing the "drastic, harsh and dangerous" remedy of a full receivership with "day-to-day operational control" when there are other less drastic measures that can be taken. *Voso*, 2016 WL 1435721 at *13 (requiring independent audit and restricting use of funds for non-business purposes in lieu of requested receivership); *see also Dixon v. Barry*, 967 F. Supp. 535, 554 (D.D.C. 1997) (appointing full receiver only after other oversight measures failed); *Miller*, 2010 WL 5095812 at *7 (appointing full receiver to manage corporate assets only after overseer proved ineffective) (cited by CIBC).

As shown above and in the accompanying declarations, since the borrowing base issues were discovered, JH has cooperated with CIBC, provided information to CIBC and its consultant, taken steps to address CIBC's concerns (*e.g.*, establishing segregated accounts), and has engaged a qualified Chief Restructuring Officer to evaluate restructuring alternatives and to coordinate with CIBC and JH's other creditors.

---

[9] JH also has made several improvements to its processes and controls. (Riggio Dec. ¶¶ 53-55.)

Because the factors do not favor a receivership and because JH and the Chief Restructuring Officers will continue to work with CIBC to address its informational and other concerns, there is no reason to appoint a receiver, let alone impose the liquidating receivership CIBC seeks in its proposed order.

## *Conclusion*

For the foregoing reasons, Defendants respectfully request that the Court enter an order denying Plaintiff's Motion for Order Appointing Receiver.

Dated: July 3, 2018                                    Respectfully submitted,

*/s/ Greg Shinall*
Greg Shinall
Robert D. Cheifetz
Martin Sinclair
SPERLING & SLATER, P.C.
55 West Monroe Street, Suite 3200
Chicago, IL 60603
(312) 641-3200

*Counsel for the Defendants*
JH Portfolio Debt Equities, LLC;
JH Portfolio Debt Equities 2, LLC;
JH Portfolio Debt Equities 4, LLC; and
JH Reviver LLC

## **CERTIFICATE OF SERVICE**

I, Greg Shinall, hereby certify that on July 3, 2018, I caused a true and correct copy of the foregoing **Defendants' Response to Plaintiff's Motion for Order Appointing Receiver** to be served upon the following individuals via ECF Electronic Case Filing:

> Edward S. Weil
> Mark A. Silverman
> Molly E. Thompson
> Dykema Gossett PLLC
> 10 S. Wacker Drive, Suite 2300
> Chicago, IL 60606

/s/ Greg Shinall