THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CIBC Bank USA f/k/a The Private Bank and Trust Company, as Administrative Agent, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 18-cv-3964 |
| v. | ) ) ) | Judge John Z. Lee |
| JH Portfolio Debt Equities, LLC; JH Portfolio, Debt Equities 2, LLC; JH Portfolio Debt Equities 4, LLC; and JH Reviver LLC | ) ) ) ) | Magistrate Judge Daniel G. Martin |
| Defendants. | ) ) | |

## **DECLARATION OF TODD HARRINGTON**

1.  I am Senior Vice President and General Counsel at JH Portfolio Debt Equities LLC ("JH"). I have the authority to make these statements on its behalf.

2.  The statements made in this declaration are based on my personal knowledge and based upon my review of agreements of JH relevant to the matters referenced below. If called to testify as a witness, I would testify competently and consistent with the facts stated herein.

Payments to Joint Venture Entities

3.  In the Affidavit of Matthew Berman (the "Berman Affidavit"), Mr. Berman states that the Defendants improperly diverted cash collateral from the Lenders under the Credit Agreement.[1] (Berman Affidavit ¶¶ 35-36.) The monies paid to the joint venture entities, as discussed in the Berman Affidavit, ¶¶ 35-36, were done pursuant to pre-existing contracts.

4.  JH Portfolio Debt Equities, LLC ("JH") is a member in JH Met Asset Entity,

---

[1] All defined terms contained in the Declaration of Todd Harrington not defined herein are incorporated by reference from the Declaration of Anthony Riggio and the Credit Agreement (*see* Doc. 1-1.).

LLC, a Delaware limited liability company ("JH Met"), in which Metropolitan Partners Fund III A, LP ("MPF IIIA") and COCD Asset Holdings, LLC ("COCD") are also members. The rights of the members of JH Met are governed by the Fifth Amended and Restated Limited Liability Company Agreement of JH Met dated as of June 28, 2017 (the "JH Met LLC Agreement", *see* JH 15).

      5.      JH Met has two subsidiaries, JH Met Asset Entity Subsidiary A, LLC ("JH Met Sub A") and JH Met Asset Entity Subsidiary B, LLC ("JH Met Sub B").

      6.      JH is also a member in JH CX Asset Entity LLC, a Delaware limited liability company ("JH CX"), in which CX Asset Holdings, LLC ("CX Asset Holdings") is also a member. The rights of the members of JH CX are governed by the Limited Liability Company Agreement of JH CX dated as of November 1, 2016 (the "JH CX LLC Agreement", *see* JH 16.)

      7.      JH, JH Met, JH Met Sub A, JH Met Sub B and JH CX are all separate legal entities.

      8.      Under the JH Met LLC Agreement, JH Met is obligated to make monthly distributions to each of JH and MPF IIIA in a specified percentage of the collections received on the accounts and related receivables of JH Met Sub A (the "Met Sub A Accounts"). Initially, JH Met is obligated to pay 40% of such collections to JH and 60% of such collections to MPF IIIA. (*See* JH 15 Schedule C-1, Class A Distribution Schedule.) However, once MPF IIIA receives a 25% internal rate of return on its capital investment, JH Met is obligated to pay 100% of such collections to JH and 0% of such collections to MPF IIIA. (*See* JH 15 Schedule C-1, Class A Distribution Schedule, see also JH 15, *Cut Off* at Ex. Z-3.)

      9.      Under the JH Met LLC Agreement, JH Met is obligated to make monthly distributions to each of JH and COCD in a specified percentage of the collections received on the

accounts and related receivables of JH Met Sub B (the "Met Sub B Accounts"). Initially, JH Met is obligated to pay, depending on certain events, between 34% and 45% of such collections to JH and between 55% and 66% of such collections to COCD. From and after January 20, 2020, JH Met is obligated to pay 100% of such collections to JH and 0% of such collections to COCD. (*See* JH 15, Schedule C-2, Class B Distribution Schedule see also JH 15, *Cut Off* at Ex. Z-3.)

10. Pursuant to a letter agreement dated March 28, 2017 (*see* JH 17), which was amended and restated by separate letter agreements dated May 30, 2017 (*see* JH 18), June 28, 2017 (*see* JH 19), September 29, 2017 (*see* JH 20), October 30, 2017 (*see* JH 21), November 28, 2017 (*see* JH 22), and on January 18, 2018 (*see* JH 23) (collectively, the "COCD Lender Letter Agreement")), among JH, COCD and certain lenders to COCD, if the amount distributed by JH Met to COCD pursuant to the JH Met LLC Agreement is less than the amount projected to be distributed then JH is obligated to pay to the COCD lenders the difference between the projected distributions and the amount actually distributed by JH Met.

11. In addition, under the COCD Lender Letter Agreement, if the notes payable to the COCD lenders are not paid in full on the maturity date of each note, then the COCD lenders can "put" the notes to JH (that is, cause JH to buy the notes from the COCD lenders) for a purchase price equal to the outstanding amount of the notes. Therefore, any payments by JH to the COCD lenders in respect of the note obligations reduces the amount of JH's liability under JH's "put" obligation.

12. Pursuant to a letter agreement dated June 28, 2017 (the "June 28 Met/CX Lender Letter Agreement", *see* JH 24), among JH, CX Asset Holdings, certain lenders to CX Asset Holdings and MPF IIIA, on July 20, 2017, JH was obligated to pay $370,000 to MPF IIIA in respect of MPF IIIA's Class A Membership Interests in JH Met.

3

13. Under the JH CX LLC Agreement, JH CX is obligated to make monthly distributions to each of JH and CX Asset Holdings in a specified percentage of the collections received on the accounts and related receivables of JH CX (the "JH CX Accounts"). Initially, JH CX is obligated to pay 40% of such collections to JH and 60% of such collections to CX Asset Holdings. From and after the 38th month following the date of the JH CX LLC Agreement, JH CX is obligated to pay 100% of such collections to JH and 0% of such collections to CX Asset Holdings. (*See* JH 16, Section 8.1.)

14. Pursuant to a letter agreement (the "Haymarket Letter Agreement", *see* JH 25) executed by JH on or about November 1, 2016 (dated incorrectly on the face of the document as November 1, 2018), for the benefit of Haymarket Insurance Company ("Haymarket"), a lender to CX Asset Holdings, if the distributions from JH CX to CX Asset Holdings are insufficient to pay certain scheduled principal payments to Haymarket then JH is obligated to pay to Haymarket the amount of the deficiency.

15. Pursuant to the June 28 Met/CX Lender Letter Agreement, on July 20, 2017, JH was obligated to pay $1,365,000 to certain lenders of CX Asset Holdings. (*See* JH 24.)

16. Pursuant to a letter agreement dated October 24, 2017 (the "October 24 CX Lender Letter Agreement," *see* JH 26), among JH, CX Asset Holdings, and certain lenders to CX Asset Holdings, if the amount distributed by JH Met to CX Asset Holdings from and after October 2017 pursuant to the JH CX LLC Agreement is less than the amount projected to be distributed then JH is obligated to pay to the lenders of CX Asset Holdings the difference between the projected distributions and the amount distributed by JH CX.

17. For information on the specific amounts of the payments referenced in paragraphs 35-36 in the Berman Affidavit, see the Declaration of Keri Krisan.

Distributions to Defendants' Members

18. In the Berman Affidavit, Mr. Berman states that the Defendants made distributions and payments to certain of their members in breach of the Credit Agreement. (Berman Affidavit ¶ 45.) Distributions to members of the Defendants are governed by their respective operating agreements.

19. In the case of JH and JH Portfolio Debt Equities 2, LLC, distributions are determined by the member. In the case of JH Portfolio Debt Equities 4, LLC, distributions are determined by the Manager (which at all times has been JH). In the case of JH Reviver LLC, distributions are determined by the members, *i.e.*, JH and Reviver Financial LLC.

20. In the Credit Agreement, there is a restriction on distributions from JH to its member of $10,000,000 on a trailing twelve-month basis. As of January 31, 2018, the trailing twelve-month distribution was $9,830,776. With a constrained capacity to distribute money to its member, and with JH Capital Group Holdings LLC in need of cash to fulfill overhead and operations expenses associated with a contemplated corporate restructuring with the Easterly Acquisition Corp., JH Portfolio Debt Equities LLC issued a series of loans to JH Capital Group Holdings LLC totaling approximately $3,000,000 (the "JHCG Loan"). Repayment of the JHCG Loan was to be made at the closing of the contemplated corporate restructuring.

21. As a result of a Deposit Account Control Agreement (DACA) entered into between CIBC and the Defendants on May 1, 2018 (*see* JH 27.), CIBC had a right to approve or disapprove of all payments to be made by Defendants. When CIBC disapproved of a distribution to be made by JH Reviver LLC to its member Reviver Financial LLC, which was to be made pursuant to the JH Reviver LLC operating agreement, JH Reviver LLC did not make the distribution. As a result of JH Reviver LLC not making the distribution, National Credit Adjusters LLC ("NCA"), sister company to Reviver Financial LLC and the master servicer of

the JH Reviver LLC portfolio, began netting out of the amounts payable to JH Reviver LLC the portion that would have been distributed to Reviver Financial LLC, and began remitting to JH Reviver LLC only the portion of the collections that would be distributable to JH.

[REMAINDER OF THIS PAGE LEFT INTENTIONALLY BLANK.]

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 3, 2018.

Signature: _____

Todd Harrington