**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CIBC BANK USA f/k/a THE PRIVATE BANK AND TRUST COMPANY, as Administrative Agent, ) ) ) ) | |
| Plaintiff, ) ) | No. 18-cv-3964 |
| vs. ) ) | Judge John Z. Lee |
| JH PORTFOLIO DEBT EQUITIES, LLC; JH PORTFOLIO DEBT EQUITIES 2, LLC; JH PORTFOLIO DEBT EQUITIES 4, LLC; and JH REVIVER LLC, ) ) ) ) ) | Magistrate Judge Sunil R. Harjani |
| Defendants. ) | |

**RECEIVER RONALD F. GREENSPAN'S MOTION TO HOLD DEFENDANTS IN CIVIL CONTEMPT FOR FAILING TO PROVIDE ACCESS TO TELEPHONE SYSTEM, CERTAIN SOFTWARE AND DATABASES**

Ronald F. Greenspan, not individually, but solely as the receiver appointed by the *Stipulated Order for Immediate Appointment of Receiver*, dated February 8, 2019 [Docket #91] (the "Receiver Order"), moves the Court (the "Motion"), pursuant to its inherent powers and section VII.C of the Receiver Order, to hold defendants JH Portfolio Debt Equities, LLC, JH Portfolio Debt Equities 2, LLC, JH Portfolio Debt Equities 4, LLC, JH Reviver LLC (collectively, "Defendants") in civil contempt for failing and refusing to comply with sections III.B and V.A of the Receiver Order by (a) refusing to provide the Receiver with administrator-level access to certain software and databases and (b) failing to carry out the Receiver's instruction to reprogram their phone system to forward inbound calls to the new servicers. In support of the Motion, the Receiver states:

**Introduction**

1. Defendants are in the business of servicing and collecting consumer debt. The Court appointed the Receiver to preserve the "Receivership Property," which constitutes the collateral of plaintiff CIBC Bank USA ("CIBC") and a group of lenders (collectively, "Lenders"). The

Receiver Order authorizes the Receiver to take "immediate possession" of all Receivership Property, which specifically includes "electronically stored information, user credentials, software usernames and passwords," and obligates Defendants to "cooperate fully with the Receiver in the execution of his duties." But they're not. As discussed herein, Defendants have inexplicably refused to give the Receiver unfettered access and control over several software accounts and databases which are critical to the management and supervision of the Receivership Property, and have failed to reprogram their phone system to forward incoming consumer calls to Allgate Financial, one of the new collection servicers – even though Defendants had specifically told the Receiver that they had done so. Defendants' conduct violates the Receiver Order, and should be remedied by holding them in civil contempt.[1]

## Factual Background

### A. CIBC's allegations against Defendants

2. In June 2018, CIBC, on behalf of itself and as administrative agent for the Lenders, commenced this civil action against Defendants, who are in the business of purchasing portfolios of consumer and merchant loan obligations ("Portfolios") at a discount off of their face value and servicing the collection of those debts.

3. The Lenders and Defendants were parties to a credit agreement pursuant to which the Lenders provided Defendants with a revolving line of credit from which they could borrow

---

[1] A related problem is on the horizon. CIBC, the Receiver and Defendants have been working toward implementing the memorandum of understanding that the Court approved on April 24, 2019 [Docket #131] regarding the transfer of servicing and title of the Portfolios that constitute the Lenders' collateral. As part of these discussions, Defendants' principal insiders have asserted that the only obligations they now have to CIBC and the Receiver are those in the memorandum of understanding. In other words, Defendants' insiders have been ignoring the duties imposed on them by the Receiver Order. In fact, Defendants' insiders have just advised the Receiver that because their E&O insurance coverage apparently lapses at 12:01 a.m. on May 16, 2019, none of Defendants' officers will be available after May 15, 2019 to comply with the Receiver Order. Because of this, the Receiver anticipates that he will be forced to file yet another contempt motion. To avoid further motion practice, however, the Receiver suggests that it would be helpful to discuss this developing dispute at the hearing on this Motion.

money from Lenders in an aggregate amount calculated with respect to, in part, a figure known as the "borrowing base amount."

4. CIBC, on behalf of itself and the Lenders, alleges that Defendants breached the credit agreement by, among other things, providing "materially false, misleading and incorrect information" on the borrowing base certificates they submitted CIBC. (Compl. ¶ 54.) Specifically, CIBC alleges that Defendants "inflated the applicable borrowing base amounts in various ways, which caused the Lenders to advance more than $80 million over the limits set forth in the credit agreement. (Compl. ¶¶ 55-58.) Because Defendants have not repaid that overadvance, CIBC alleges that they are in default under the credit agreement, and that the Lenders have been damaged in an amount not less than $172.5 million. (Compl. ¶¶ 60, 90.)

5. CIBC seeks a money judgment against Defendants in an amount of at least $172.5 million. (Compl. p. 17.)

**B.     Appointment of the Receiver**

6. Shortly after commencing this civil action, CIBC moved for the appointment of a receiver. [Docket #8] As grounds for that relief, CIBC alleged primarily that Defendants had engaged in fraudulent conduct, and that the Lenders' collateral was in imminent danger of being diminished in value. After extensive briefing [Docket #26, 27, 42], the parties, in January 2019, filed a stipulation for the timing and appointment of a receiver. [Docket #80]

7. Consistent with the parties' stipulation, on February 7, 2019, CIBC filed an agreed motion for the appointment of a receiver. [Docket #84]

8. On February 8, 2019, the Court granted the parties' agreed motion and entered the Receiver Order [Docket #91], though the Court subsequently entered an order providing that the Receiver Order would not come into force until February 14, 2019 at 5:00 pm. [Docket #96]

**C.     Relevant provisions of the Receiver Order**

9.      The Receiver Order appointed the Mr. Greenspan to be a federal equity receiver over certain property known collectively as the "Receivership Property" that is specified on Exhibit A to the Receiver Order. (Receiver Order, § I.) The Receiver Order contains several distinct provisions conferring power and imposing duties on the Receiver. (Receiver Order, §§, III.D and V.A.) The Receiver's principal charge is to "[t]o take such actions as necessary and appropriate for the preservation of Receivership Property …" (Receiver Order, § III.D.g.)

10.     As relevant to this Motion, the Receiver Order "authorized" the Receiver "to take immediate possession of all real, personal, tangible and intangible property of the Defendants pertaining to the Receivership Property, wherever located, including but not limited to *electronically stored information, user credentials, software usernames and passwords*, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage device …." (Receiver Order § V.A (emphasis added).)

11.     The Receiver Order also imposed various affirmative obligations and negative imperatives on Defendants, including requiring them to "cooperate fully with the Receiver in the execution of his duties" (Receiver Order § I), and suspending any authority that Defendants or their insiders have with respect to any of the Receivership Property (Receiver Order § III.B).

**D.     Defendants refuse to provide the Receiver with administrator-level access to their software and fail to forward calls to the New Servicers.**

12.     Defendants have been winding down their operations ever since CIBC decided to cease funding them. Relatedly, and as the Court is aware from certain recently filed motions,[2] the Receiver has been in the process of transitioning the servicing of the Portfolios that constitute the

---

[2] Docket # 128, 131.

Lenders' collateral to Allgate Financial, LLC and Asset Recovery Service, LLC (the "New Servicers"), third parties who are not affiliated with Defendants.

13. Defendants have a sophisticated phone system to deal with calls to and from consumers ("Phone System"), as well as several software titles and databases enabling them to carry out their collection and servicing functions (collectively, "Software"). The Phone System is particularly important, as it is the principal medium through which the Portfolios are serviced and inquiries about consumer accounts are received. When Defendants serviced the Portfolios, all the Phone System needed to do was connect calls to Defendants' offices. But now that the New Servicers are servicing the Portfolios, incoming calls must be forwarded to the New Servicers' call centers. The problem is that they are not. The Receiver and his professionals have repeatedly directed Defendants to program the Phone System to forward incoming calls to the New Servicers. Despite multiple requests, Defendants have failed to follow the Receiver's instructions as to the Phone System, even though they represented to the Receiver that they had, in fact, done so. As a consequence, incoming calls are still routed to a "JH Portfolio" automated answering system, where they cannot be connected through to the New Servicers and callers are unable to leave a message, let alone speak to a live person. Many calls are simply disconnected. This is obviously unacceptable, and puts the estate in regulatory and economic jeopardy.

14. The Receiver currently lacks administrative account access to the majority of the Software. The most operationally critical components of the Software are DebtNext (a commonly used debt servicing and collection tool), QuickBooks (a well-known accounting program) and AppRiver (Defendants' email system), though the Software also includes several accounts/titles that are of lesser immediate importance but which are nonetheless necessary to maintain the

5

Portfolio collateral.[3] Defendants have refused to give the Receiver or his professionals administrator-level access to the Software. Defendants have complained that it would be too burdensome to comply, and that doing so would give the Receiver access to data that is not part of the Lenders' collateral.

## Legal Standards

15. The Receiver Order is plainly an injunction[4] that Defendants must obey until it is vacated or withdrawn. *See, e.g., W.R. Grace & Co. v. Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers of Am.*, 461 U.S. 757, 766 (1983); *Secs. & Exch. Comm'n v. McNamee*, 481 F.3d 451, 454 (7th Cir. 2007). A federal court has the inherent power both to enforce its injunctions (*see, e.g., Shapo v. Engle*, 463 F.3d 641, 643 (7th Cir. 2006); *Siemer v. Quizno's Franchise Co. LLC*, No. 07-CV-2170, 2014 WL 12793788, at *2 (N.D. Ill. Apr. 25, 2014) (Pallmeyer, J.)), which it normally does by the contempt power. *See, e.g., Secs. & Exch. Comm'n v. Homa*, 514 F.3d 661, 674 (7th Cir. 2018). A court may also simply issue further orders "that are necessary to implement and enforce" an injunction. *United States v. Switlyk*, 147 F. Supp. 3d 1354, 1358 (M.D. Fla. 2015) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991)).

16. Civil contempt proceedings may be either coercive or remedial. A coercive contempt order "compel[s] the contemnor into compliance with an existing court order," while a

---

[3] These titles include: **Office 365** (word processing, spreadsheets, etc.); **Tableau** (data analytics software); **ManageEngine** (comprehensive IT management software): **AuthAnvil** (identity and access management solutions, including two-factor authentication): **VMware** (cloud computing and platform virtualization software and services); **Okta** (cloud-based service for workforce and customer identification); **Cylance** (malware prevention); **Smartsheets** (collaboration and work management tool used to assign tasks, track project progress and manage work); **CrushFTP** (proprietary multi-protocol, multi-platform file transfer server); and **DocuWare** (document management and workflow automation).

[4] "Injunctions may be negative or preventative, restraining some specific action, or they may be positive or mandatory, directing a party to perform some action." *Gunther v. Superior Court of Cal. ex rel. Cty. of Orange*, 2007 WL 2758016, at *1 n.2 (E.D. Cal. Sept. 21, 2007). The Receiver Order entered in this case contains both negative and positive provisions.

6

remedial contempt order "compensate[s] the complainant for losses sustained as a result of the contumacy." *Lightspeed Media Corp. v. Smith*, 761 F.3d 699, 712 (7th Cir. 2014); *United States v. Dowell*, 257 F.3d 694, 699 (7th Cir. 2001). The sanction, regardless of its nature, "must be predicated on a violation of an explicit court order." *Feltner v. Title Search Co.*, 283 F.3d 838, 841 (7th Cir. 2002). In this circuit, a party is in contempt if clear and convincing evidence shows that "(1) a court order set forth an unambiguous command; (2) the alleged contemnor violated that command; (3) the violation was significant, meaning that the alleged contemnor did not substantially comply with the order; and (4) the alleged contemnor failed to make a reasonable and diligent effort to comply." *Ohr ex rel. Nat'l Labor Relations Bd. v. Latino Exp., Inc.*, 776 F.3d 469, 474 (7th Cir. 2015). Put another way, the Court does not have to find that the violation was willful, but instead may find a party in civil contempt if it "has not been reasonably diligent and energetic in attempting to accomplish what was ordered." *Select Med. Corp. v. Cash Flow Consultants, Inc.*, No. 09 C 8066, 2010 WL 2891639, at *1 (N.D. Ill. July 20, 2010) (citing *Goluba v. Sch. Dist. of Ripon*, 45 F.3d 1035, 1037 (7th Cir. 1995)).

## **Argument**

17. The Motion[5] should be granted. Clear and convincing evidence establishes all of the elements necessary for contempt.

18. <u>First</u>, as discussed above, the Receiver Order contains several unambiguous directives as to what Defendants must do (and not do) vis a vis Receivership Property. Under the Receiver Order, Defendants must "cooperate fully with the Receiver in the execution of his duties" (Receiver Order § I), and have been deprived of any authority that they (or their insiders) had with

---

[5] A movant may ask a district court to find a party in civil contempt by notice and a motion, without first obtaining an order to show cause. *United States Secs. & Exch. Comm'n v. Hyatt*, 621 F.3d 687, 695 (7th Cir. 2010).

7

respect to the Receivership Property (Receiver Order § III.B). As relevant here, the Receiver Order authorized the Receiver "to take immediate possession of all real, personal, tangible and intangible property of the Defendants pertaining to the Receivership Property, wherever located, including but not limited to *electronically stored information, user credentials, software usernames and passwords*, computers, laptops, hard drives, external storage drives, and any other such memory, media or electronic storage device …." (Receiver Order § V.A (emphasis added).) Those two provisions together mean the Court ordered Defendants to cooperate fully with the Receiver with his assumption of possession over all Software and the Phone System.[6]

19. But they're not. Of the 19 programs and databases that constitute the Software, Defendants have only given the Receiver access to *four*.[7] Defendants have stonewalled and refused to give the Receiver administrator-level access any of the other Software titles, including those that are critical to the preservation of the Portfolios (DebtNext, QuickBooks and AppRiver). Defendants have, in some cases, agreed to give the Receiver "user" access to the Software. User access carries with it no administrative privileges, and leaves Defendants as the administrators of the Software. The Receiver Order did not give the Receiver the ability merely to *view* electronically stored information; it authorized the Receiver to "*possess*" that data. And considering that the Receiver Order specifically ordered Defendants to give the Receiver possession of "software

---

[6] Although the Phone System is not specifically enumerated in the Receiver Order, it is a sophisticated piece of technology that is programmable and computer controlled. It plainly qualifies as a "computer," "external storage device" and "any other such memory, media or electronic storage device," and, moreover, it contains "electronically stored information."

[7] Salesforce (an interface for case management and task management); e-OSCAR (a web-based automated system enabling data furnishers and credit reporting agencies to create and respond to consumer credit history disputes); Ostendio MyVCM (a cloud-based cybersecurity and information management platform); and AdvoLogix (case-matter management system).

usernames and passwords," the Court clearly meant to give the Receiver access to Defendants' already-existing administrator user names and passwords.[8]

20. <u>Second</u>, Defendants violated the Receiver Order by failing to comply with the Receiver's directives regarding the Software and the Phone System. There is no dispute that Defendants have not followed the Receiver's instructions as to those components of the Receivership Property.

21. <u>Third</u>, Defendants' violations of the Receiver Order were significant because the Software and the Phone System are both critical to the maintenance and preservation of the Portfolio collateral. And yet, Defendants have flatly refused give the Receiver administrative-level access to the Software. That leaves the Receiver entirely dependent on Defendants for doing things like, for example, reprogramming the Phone System so that it forwards incoming calls to the New Servicers. That is contrary to the obvious intent of the Receiver Order, which was to take Defendants entirely out of the loop with regard to any of the Receivership Property – a point starkly illustrated by the language "suspend[ing]" any authority that Defendants or their insiders have as to the "management, maintenance and control" over that property. (Receiver Order § III.B.)

22. <u>Fourth</u>, Defendants made no reasonable or diligent effort to comply with the Receiver's directives to reprogram the Phone System or give him administrator-level control over the Software. It is not as though Defendants are methodically working through doing either task; they have misled the Receiver about the former, and categorically refused to do the latter.

---

[8] Sections III.B and V.A of the Receiver Order are unambiguous because they are not susceptible to more than one reasonable interpretation. *See, e.g., Fed. Trade Comm'n v. Leshin*, No. 06-61851-CIV, 2009 WL 10667856, at *8 (S.D. Fla. Apr. 7, 2009) ("an agreed order is ambiguous … where it is susceptible to two different interpretations, each of which is reasonably inferred from the terms of the contract"), *aff'd*, 618 F.3d 1221 (11th Cir. 2010). Indeed, considering that the Receiver Order was drafted with the input – and ultimately entered with the consent – of Defendants, it is difficult to conceive of how they could credibly claim that sections III.B and/or V.A are ambiguous.

Defendants complain that it would be too burdensome to comply, and that doing so would give the Receiver access to data that is unrelated to the Lenders' collateral. Neither concern, even if facially valid, is a warrant to violate the Receiver Order. *W.R. Grace & Co.*, 461 U.S. at 766; *McNamee*, 481 F.3d at 454.

23. It is, moreover, difficult to take those objections seriously. Defendants negotiated the terms of the Receiver Order, including the language requiring their cooperation in giving the Receiver "immediate possession" of "all" Receivership Property, particularly including "electronically stored information, user credentials, software usernames and passwords." The Court should presume that Defendants knew what those words meant, and took into account any practical problems they might encounter in carrying them into effect. *Cf. Kleinberg v. Radian Grp., Inc.*, No. 01CIV.9295(RMB)(GWG), 2002 WL 31422884, at *6 (S.D.N.Y. Oct. 29, 2002) ("drafters of sophisticated contracts must be presumed to know how to … use different words and construction to establish distinctions in meaning"), *report and recommendation adopted*, 240 F. Supp. 2d 260 (S.D.N.Y. 2002).

24. Again, the Receiver need not show that Defendants *willfully* violated the Receiver Order by not following his directions as to the Software and the Phone System; it is enough if Defendants were not "reasonably diligent and energetic" in carrying that order into effect. *Select Med. Corp.*, 2010 WL 2891639, at *1. The Receiver has shown that Defendants have been intransigent as to these matters, which amply justifies a finding of civil contempt.

**WHEREFORE**, Ronald W. Greenspan, not individually, but solely as the Receiver appointed by the order of February 8, 2019, respectfully moves the Court to enter an order: granting the Motion; adjudging Defendants to be civil contempt; and awarding such further relief as the Court deems necessary and appropriate.

Dated: May 10, 2019                               Respectfully submitted,

                                                        Ronald W. Greenspan, Receiver

                                                        By <u>/s/ Terence G. Banich</u>
                                                                   One of his attorneys

Ira Bodenstein (3126857)
Brian L. Shaw (6216834)
Terence G. Banich (6269359)
Fox Rothschild LLP
321 N. Clark Street, Suite 800
Chicago, Illinois 60654
Phone: (312) 541-0151

11