IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CIBC Bank USA f/k/a The PrivateBank And Trust Company, as Administrative Agent, | ) ) ) ) | |
| | ) | No. 18 C 3964 |
| Plaintiff, | ) ) | |
| v. | ) | Judge John Z. Lee |
| JH Portfolio Debt Equities, LLC; JH Portfolio Debt Equities 2, LLC; JH Portfolio Debt Equities 4, LLC; and JH Receiver LLC; | ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

CIBC Bank ("CIBC") filed this suit in its capacity as an administrative agent representing itself and seven other financial institutions ("the Lenders"). CIBC claims that the Defendants, which are a number of affiliated business entities (collectively, "JH"), breached the terms of a credit agreement that they entered into with the Lenders. JH now moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1), arguing that CIBC has not alleged that each of the eight Lenders is diverse from JH, thereby failing to establish diversity jurisdiction. CIBC, in turn, argues that so long as its citizenship is diverse from that of JH, the requirements of diversity jurisdiction are met. For the following reasons, CIBC's reasoning is incorrect, and the Defendants' motion is granted.

I.   **Background**

CIBC and the other Lenders seek to recover principal owed by JH, a diffuse corporation that purchases and collects on various third-party loans. Compl. at 1, ECF No. 1. In 2017, the Lenders and JH entered into an agreement, whereby the Lenders agreed to provide a revolving credit line to JH ("the Credit Agreement" or "Agreement"). *Id.* at 5. In return, JH promised, among other things, to grant the Lenders with a first-priority security interest in various collateral, including some of its loan portfolios. *Id.* at 6. Using its credit line, JH borrowed approximately $182 million from the Lenders; CIBC provided JH with $45 million of the total amount. *Id.* at 5.

As part of the Agreement, the parties agreed that, in the event that JH defaulted, CIBC would act as the administrative agent of all eight Lenders, and CIBC was granted the exclusive right to enforce any claims that the Lenders may have had against JH. Credit Agreement § 9.01, ECF No. 1-1. Furthermore, the Agreement granted a certain subset of the Lenders the ability to force CIBC to sue JH for violating the Agreement as well as the ability to forbid CIBC from filing such a suit. *Id.* § 8.02.

In June 2018, CIBC filed a complaint in its capacity as the administrative agent of all eight Lenders, alleging that JH had breached the Agreement in various ways. Compl. at 15. In sum, CIBC claims that JH owes the Lenders $172.5 million in principal, along with attorney's fees, costs, and expenses. *Id.* at 17.

The complaint also asserts that the case is properly in federal court based upon federal diversity jurisdiction. *Id.* at 3; *see* 28 U.S.C. 1332(a). For support, CIBC represents that that it is an Illinois bank with its principal place of business in Chicago, while JH's various members and branches are based in California, Delaware, and Florida. Compl. at 2–3. The complaint is silent as to the citizenship of the seven remaining Lenders.

In February 2020, JH filed a motion to dismiss. ECF No. 184. JH argues that by failing to provide the citizenship of the remaining Lenders, CIBC has not met its burden of demonstrating that complete diversity of the parties exists in this case. *Id.* at 2.

## II. Legal Standard

An objection to a federal court's subject matter jurisdiction may be raised at any time in litigation by a party, or by the court *sua sponte*. *Arbaugh v. YH Corp.*, 546 U.S. 500, 506 (2006). When moving to dismiss a complaint for lack of subject matter jurisdiction, *see* Fed. R. Civ. P. 12(b)(1), a defendant may launch either a facial or factual attack on jurisdiction. *Stroman Realty, Inc. v. Grillo,* 438 F. Supp. 2d 929, 932 (N.D. Ill. 2006).

When making a facial attack, as JH does here, a defendant contends that the allegations in the pleadings are insufficient on their face to support federal jurisdiction. *See Continental Automotive GmbH v. iBiquity Digital Corporation*, No. 14 C 1799, 2015 WL 859569, at *2 (N.D. Ill. Feb. 26, 2015). In such circumstances, the "allegations [in the complaint] are taken as true

and construed in a light most favorable to the complainant." *Cedars–Sinai Med. Ctr. v. Watkins,* 11 F.3d 1573, 1583 (Fed. Cir. 1993). And, as always, the party seeking to invoke subject matter jurisdiction bears the burden of establishing it. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 n.3 (2006).

### III.   Analysis

To get to the point, by failing to plead the citizenship of the other seven Lenders, CIBC has not met its burden to establish diversity jurisdiction. The Court first will review the relevant principles of diversity jurisdiction and then apply them here.

### A.   Section 1332(a) Diversity Jurisdiction

Federal courts have original jurisdiction over, among other things, suits between "citizens of different States" where the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). But the parties in the action must be completely diverse; that is, the citizenship of each and every plaintiff must be diverse from the citizenship of each and every defendant. If there is an overlap in citizenship, diversity jurisdiction is lacking. *Kreuger v. Cartwright*, 996 F.2d 928, 931 (7th Cir. 1993).

Where there are multiple parties on either side, or where a party represents others in the suit, the Supreme Court has held that a court should "disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 461 (1980). The citizenship of such "real parties in interest" is relevant for jurisdictional purposes because "a primarily local controversy should be tried in the appropriate state forum." 6A

4

Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1556 (3d ed. 2020); *see id.* (explaining that "nominal or formal parties" should not be able to use their citizenship to create diversity jurisdiction where the affected parties are not diverse). And, indeed, courts have applied this rule to prevent parties from manufacturing jurisdiction by suing through a representative. *See CCC Info. Servs., Inc. v. American Salvage Pool Ass'n*, 230 F.3d 342, 346 (7th Cir. 2000) (noting that "the citizenship of the real party in interest is determinative when deciding whether the district court has diversity jurisdiction. This is because a party who has no real interest in the outcome of the litigation should not be able to use its citizenship to transform a local controversy into a federal case.") (internal citations omitted).

The Seventh Circuit has adopted this principle on numerous occasions. For instance, in *National Ass'n of Realters v. National Real Estate Ass'n, Inc.*, 894 F.2d 937, 940 (7th Cir. 1990), a trade association sued on behalf of its members who were allegedly misled into purchasing malpractice insurance. The court held that, because it was the members who had suffered the injury and not the association itself, the citizenship of the members is what counted in determining diversity jurisdiction. *See id.* ("The members were in the front line. They received the blow. [And the association's] counsel conceded at argument that if [it] ever obtains any damages on its members' behalf[,] . . . it will turn those damages over to the members."). *See also Northern Trust Co. v. Bunge Corp.*, 899 F.2d 591, 595 (7th Cir. 1990) (noting the "general policy of testing diversity by the citizenship of the parties represented rather than the citizenship of the representative").

5

This is true even where the representative also is seeking to represent its own interests in the suit. For example, in *Northern Trust*, seventy-seven shareholders of the Lauhoff Corporation sold their shares to the Bunge Corporation. In the purchase agreement, the shareholders appointed the Northern Trust Company as their "true and lawful agent with respect to all matters arising in the connection with [the] agreement." *Id.* at 592. After the transaction, a dispute between the shareholders (now former shareholders) and Bunge ensued, and the Northern Trust filed a declaratory judgment action in federal court, claiming that diversity jurisdiction existed because its citizenship was diverse from that of Bunge. Among its arguments, the Northern Trust noted that, in addition to its duties as an agent for all former shareholders, it served as a legal trustee of the proceeds of sixty percent of the sold stock.

The Seventh Court remained unpersuaded. First, the court noted that the Northern Trust did not fall within any of the recognized exceptions to the general rule that the citizenship of the real parties to the controversy is what matters—for instance, Northern Trust was not a corporation suing for its own injuries; it was not a shareholder pursuing a derivative action; and it was not a class representative under Rule 23. *See id.* at 594–95.

As for the Northern Trust's contention that it was, in fact, a trustee of some of the sales proceeds, and thus had a stake in the outcome of the suit, the Seventh Circuit observed that Northern Trust was not filing suit in its capacity as a trustee, but rather as a representative of the shareholders. *Id.* at 595 n.3 ("Northern in its

6

capacity as trustee is not, however, before this Court any more than the Northern Trust Company in its individual capacity is before this Court."). Therefore, given that the Northern Trust had "not sued in its own name" but rather as the agent of the shareholders, the court rejected that an analysis of diversity jurisdiction could be properly limited, on the plaintiff side, to the citizenship of Northern Trust alone. *Id.* at 595.

## B.  CIBC and the Other Lenders

With these precedents in mind, the Court concludes that the non-CIBC Lenders are real parties to the controversy in this case, and their citizenship must be counted in analyzing diversity jurisdiction. While CIBC, in its capacity as an individual bank, holds a financial interest in the outcome of the suit, CIBC appears before this Court as a representative of all eight Lenders. *See, e.g.*, Civ. Cover Sheet at 1, ECF No. 2 (declaring that the plaintiff in this case is "CIBC Bank . . . as Administrative Agent to all Lenders"). That is, CIBC sues to recover damages for the parties it represents, not for any damages it itself is owed in its role as an administrative agent, *see* Compl. at 16–17. Moreover, all eight Lenders "received the blow" from JH's alleged breach of contract, and any damages awarded to CIBC in this suit would presumably be "turn[ed] . . . over" and distributed amongst them. *Nat'l Ass'n of Realtors*, 894 F.2d at 940.

CIBC's arguments to the contrary are unavailing. For example, it notes that the Credit Agreement vests it with exclusive enforcements rights on behalf of the Lenders, and then cites *RK Co. v. See*, 622 F.3d 846 (7th Cir. 2010), for the proposition

7

that the "real party in interest" is the one "who possesses the right or interest to be enforced through litigation." *Id.* at 850. But CIBC here confuses a "real party in interest" under Fed. R. Civ. P. 17(a) with a "real party in controversy" for purposes of diversity jurisdiction.

The reason underlying Rule 17's requirement that "an action must be prosecuted in the name of the real party in interest" is "to protect the defendant against a subsequent action by the party actually entitled to recover." *Id.* at 850 (internal citations omitted). Thus, "under Rule 17, we are concerned only with whether an action can be maintained in the plaintiff's name." *Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 757 (7th Cir. 2008) (citation omitted). And, while there is a "rough symmetry between the real party in interest standard of Rule 17(a) and the rule that diversity jurisdiction depends upon the citizenship of real parties in controversy . . . the two rules serve different purposes and need not produce identical outcomes in all cases." *Navarro*, 446 U.S. at 462 n.9 (cleaned up). To put it another way, "although one serving in a representative capacity is a real party in interest in the sense that the action is properly maintained in his name, Fed. R. Civ. P. 17(a), a representative is not necessarily the real party in interest for the purpose of determining diversity jurisdiction." *Wilsey v. Eddingfield*, 780 F.2d 614, 615 (7th Cir. 1985) (citation omitted).

CIBC's citations to a few out-of-circuit cases also miss the mark. CIBC points to *Chase Manhattan Bank v. Motorola Inc.*, 136 F. Supp. 2d 265 (S.D.N.Y. 2001), where the court held that Chase, which was suing as an administrative agent on

8

behalf other lenders in a bank syndicate, was the real party to the controversy for diversity purposes. *See id.* at 266. As an initial matter, to the extent the holding in this case is inconsistent with Seventh Circuit law, it has no force. But, putting that to the side, *Chase* is factually distinguishable. In *Chase*, the court took pains to detail the substantial control that Chase, as the administrative agent, had over the other banks when it came to the financial arrangement between the syndicate and the counterparty, noting that such an arrangement was advantageous to both the counterparty and the banks, whose union was "often fractious." *See id.* at 267–68, 271. For example, Chase, as administrator, possessed full autonomy to sue to enforce the agreement, or to not sue at all. As a result, the court found that Chase bore all the hallmarks of a real party to the controversy.

By contrast, here, CIBC's authority is far less. Just by way of illustration, the other banks can order CIBC to file a lawsuit to enforce their rights under the agreement (even if CIBC wishes not to do so), and they can direct CIBC not to file a lawsuit (even if it desires otherwise). In this way, CIBC's role as an administrative agent is more akin to the named plaintiffs in *National Ass'n of Realtors* and *Northern Trust*.

For similar reasons, CIBC's reliance on *KeyBank Nat'l Ass'n v. Perkins Rowe Assocs., et al.*, No. 09-497-JJB, 2009 WL 4042974 (M.D. La. Nov. 20., 2009), is misplaced. There, KeyBank and Perkins Rowe entered into a loan agreement that expressly contemplated that KeyBank would sell and assign portions of the loan to other lenders. The agreement provided that, upon such sale, KeyBank would act as

9

the agent for those lenders while "keeping a dominant percentage of the loan amount for itself." *Id.* at *1. In exchange, Perkins Rowe executed a mortgage in KeyBank's favor, and the individual defendant provided KeyBank with a written guaranty. When Perkins Rowe failed to make payment on the loan, KeyBank sued, and the defendants filed a motion under Rule 12(b)(1), arguing that the citizenship of the other lenders must be considered in assessing diversity jurisdiction. *Id.*

Describing KeyBank's dominant role in the transaction, the court disagreed. For example, the court noted that "KeyBank established its leadership role in this transaction from the beginning when it negotiated the initial loan agreement, drafted the language in the amended and restated construction loan agreement, and found the other lenders." *Id.* at *4. Moreover, the mortgage and guaranty referenced KeyBank and did not mention the other lenders. This dominant role relative to the other lenders—which went beyond contractual language designating KeyBank as their representative—persuaded the court that KeyBank was undisputedly the "master of the litigation." *Id.* Thus, even if this case were consistent with Seventh Circuit law, it does not support CIBC's argument.

In sum, given the "general policy of testing diversity by the citizenship of the parties represented rather than the citizenship of the representative," *Northern Trust Co.*, 899 F.2d at 594–95, CIBC has failed to establish diversity jurisdiction by not pleading the citizenship of the remaining Lenders.

10

## IV. Conclusion

For the reasons stated above, Defendant's motion to dismiss is granted; CIBC's claims are dismissed without prejudice. CIBC will be given thirty days from the date of this order to file an amended complaint that states the citizenship of all represented Lenders.

ENTERED: 10/1/20

_____

John Z. Lee

United States District Court Judge